UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SEAN LEATH,

     Plaintiff,

-against-

COUNTY OF ORANGE & CARL E. DUBOIS,
*in his official capacity as Sheriff*,

     Defendants.

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #: _____
> DATE FILED: ___7/30/2021___

18-cv-7318 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

     Plaintiff Sean Leath ("Plaintiff"), an inmate residing in the Orange County Correctional Facility ("the Facility"), commenced this action on or about January 6, 2021, asserting various claims stemming from an incident on October 27, 2016 during which Plaintiff was assaulted by fellow inmates, including Pernell Griffin ("Griffin"). (Compl., ECF No. 2.) On July 15, 2020, the Court issued an Opinion and Order ("the Prior Opinion") granting Orange County and Sheriff DuBois's (the "Sheriff," and collectively with the County, the "County Defendants") Motion to Dismiss the Amended Complaint and dismissing Plaintiff's Section 1983 claims against the County Defendants without prejudice and the state law claims with prejudice. (ECF No. 36.) Plaintiff filed a Second Amended Complaint on August 4, 2020. ("2d. Am. Compl." (ECF No. 37).) The County Defendants' Motion to Dismiss the Second Amended Complaint (ECF No 43), which Plaintiff opposed, is now before the court. For the following reasons, the Motion is GRANTED and the Second Amended Complaint is dismissed with prejudice.

## BACKGROUND

The following facts are derived from the Second Amended Complaint and, for the purposes of this motion, are taken as true and construed in the light most favorable to Plaintiff.[1] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court assumes the parties' familiarity with this matter and summarizes only those facts relevant to the instant motion; a more detailed factual recitation is available in the Court's Prior Opinion.

### I.    Factual Allegations

During the relevant time-period, Plaintiff was an "inmate" at the Facility.[2] (2d. Am. Compl. ¶ 5.) Plaintiff alleges that the Sheriff set forth and implemented a custom and practice to place violent inmates in the Delta 1 unit, where they are separated from the general population, after they engage in acts of violence against staff and inmates while incarcerated at the Facility. (*Id.* at ¶¶ 27, 30.) The Delta 2 unit houses approximately thirty inmates charged with violent crimes who have not engaged in violence against staff and inmates while incarcerated at the Facility, and its inmates are permitted to move "free[ly]" within the unit and are subject to "limited supervision" by one correction officer at any given time. (*Id.* at ¶¶ 31, 32.)

---

[1] As he did in opposition to the Motion to Dismiss the Amended Complaint (ECF No. 25-1), Plaintiff submitted a hearing transcript through an attorney transmittal affidavit in opposition to the instant motion. (ECF No. 52-1.) This document was not attached to the Second Amended Complaint, nor has Plaintiff explained how he "relied upon [it] in bringing suit." *Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013). Accordingly, the Court declines to consider it in resolving the instant motion. *See Prevost v. City of New York*, No. 13-CV-3760 VEC, 2014 WL 6907560, at *2 (S.D.N.Y. Dec. 9, 2014) ("District courts in this circuit regularly decline to consider 50–h Transcripts submitted in support of or in opposition to a motion to dismiss, even if neither party objects" and collecting cases); *Aguilera v. Cnty. of Nassau*, 425 F. Supp. 2d 320, 323 (E.D.N.Y. 2006) (finding "no reason to believe that the plaintiff relied on the transcript of his own testimony, rather than his independent recollection of the events, in drafting the pleading."). Accordingly, the Court has not reviewed or relied on the transcript in its determination of whether Plaintiff has plausibly stated a *Monell* claim.

[2] It is not clear from the face of the Second Amended Complaint whether at the time of the incident Plaintiff was a pretrial detainee, parole violator, or sentenced and convicted prisoner.

Plaintiff alleges that under its policy, the Facility does not consider whether inmates have been violent in other facilities before determining whether to place them in the Delta 1 or Delta 2 unit. (*Id.* at ¶ 38.) Instead, when inmates charged with violent crimes are transferred from other facilities, the Facility places them in the Delta 2 unit without consideration of that inmate's behavior at a prior facilities and only reclassifies transfererd inmates from Delta 2 to Delta 1 if they engage in violent behavior after their arrival at the Facility. (*Id.*) Plaintiff contends that the policy of waiting to reclassify violent inmates into the Delta 1 unit until they are violent at the Facility violates his and other inmates' constitutional rights. (*Id.* ¶¶ 38, 42.)

On October 27, 2016, while in the Delta 2 dayroom, Plaintiff was assaulted by several inmates, including Griffin, which resulted in "multiple cuts and lacerations to his face and/or head requiring stitches, as well as multiple bruises and contusions, all with accompanying physical and emotional pain and suffering." (*Id.* at ¶¶ 1, 36, 40.) Plaintiff alleges that the Sheriff knew that Griffin had a history of violence against other inmates and prison staff at his previous facility and, therefore, that placing him in the Delta 2 unit with limited supervision amounted to deliberate indifference to the safety of other Delta 2 inmates, including Plaintiff. (*Id.* at ¶¶ 33-34.) The Second Amended Complaint provides no information regarding Griffin's alleged violence at the transferring facility or how Plaintiff learned of it.

## LEGAL STANDARD

In evaluating a defendant's motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (*per curiam*). However, a claim will survive a Rule 12(b)(6) motion only if the plaintiff alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*,

550 U.S. 554, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). A plaintiff

must show "more than a sheer possibility that a defendant has acted unlawfully," *Id.*, and cannot

rely on mere "labels and conclusions" to support a claim. *Twombly*, 550 U.S. at 555.

If a plaintiff's allegations "have not nudged [his or her] claims across the line from

conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570. On a

12(b)(6) motion, a court is "limited to the facts as presented within the four corners of the

complaint, [the] documents attached to the complaint, or [] documents incorporated within the

complaint by reference." *Taylor v. Vermont Dept. of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002)

(citing *Hayden v. County of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999)).

## DISCUSSION

### I.    *Monell* Claim

The Second Amended Complaint asserts *Monell* liability against the County of Orange and

Carl E. DuBois in his official capacity as Sheriff. "[W]here a plaintiff names both the municipal

entity and an official in his or her official capacity, district courts have consistently dismissed the

official capacity claims as redundant." *Phillips v. Cnty. of Orange*, 894 F. Supp. 2d 345, 385 n.35

(S.D.N.Y. 2012). Plaintiff admits that a claim against the Sheriff in his official capacity is the

"functional equivalent" of a claim against the County. Accordingly, the Court dismisses the claim

against the Sheriff as redundant of the claim against the County.

The County is a municipality that cannot be held liable under a *respondeat superior* theory.

*Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 691 (1978). Instead, to state a

plausible claim against a municipality, the plaintiff must allege "that the municipality itself caused

or is implicated in the constitutional violation." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d

113, 125 (2d Cir. 2004). This generally requires a plaintiff to allege that "(1) an official custom or

policy [] (2) subjected [him or her] to (3) a denial of a constitutional right." *Ferrari v. Cnty. of

Suffolk*, 790 F. Supp. 2d 34, 40 (E.D.N.Y. 2011); *see also Pembaur v. City of Cincinnati*, 475 U.S.

469, 483 (1986) ("municipal liability under § 1983 attaches where—and only where—a deliberate

choice to follow a course of action is made from among various alternatives by the official or

officials responsible for establishing final policy with respect to the subject matter in question");

*Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) ("In order to prevail on a claim against a

municipality under [S]ection 1983 based on acts of a public official, a plaintiff is required to

[allege]: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right;

(3) causation; (4) damages; and (5) that an official policy of the municipality caused the

constitutional injury.").

### A. Official Custom or Policy

To satisfy the "official custom or policy" requirement, a plaintiff must allege:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by
> government officials responsible for establishing the municipal policies that
> caused the particular deprivation in question; (3) a practice so consistent and
> widespread that, although not expressly authorized, constitutes a custom or
> usage of which a supervising policy-maker must have been aware; or (4) a
> failure by policymakers to provide adequate training or supervision to
> subordinates to such an extent that it amounts to deliberate indifference to the
> rights of those who come into contact with the municipal employees.

*White v. Westchester Cnty.*, No. 18-CV-730 (KMK), 2018 WL 6726555, at *10 (S.D.N.Y. Dec.

21, 2018) (quoting *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010)).

Second, the plaintiff must allege a "direct causal link between a municipal policy or custom and

the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).

Assuming without deciding that Plaintiff plausibly alleged a cognizable policy, his Section 1983 claim against the County nonetheless fails because he has not plausibly alleged an underlying constitutional violation.

### A. Constitutional Violation

Plaintiff contends that through the classification policy, the County is deliberately indifferent to a substantial risk of harm to inmates like Plaintiff residing in the in the Delta 2 unit who are exposed to inmates like Griffin who should have been placed in the Delta 1 unit because they have been violent at a prior facility. (2d. Am. Compl. at ¶¶ 27, 42.) the County Defendants aver that Plaintiff has failued to plausibly allege a failure to protect claim because his allegations regarding Grriffin's history of violence are wholly conclusory. The Court agrees with the County Defendants.

It is unclear from the Second Amended Complaint whether Plaintiff's status at the Facility was that of a pretrial detainee, parole violator, or convicted and sentenced prisoner. (*Id.* at ¶ 5.). A pretrial detainee's deliberate indifference claim is analyzed under the Fourteenth Amendment and convicted prisoners' deliberate indifference claims are analyzed under the Eighth Amendment. *Darnell v. Pineiro*, 849 F.3d 17 (2d Cir. 2017). The Second Circuit has yet to determine whether parole violators are analyzed under the Eighth or Fourteenth Amendments for deliberate indifference claims. *Horace v. Gibbs*, 802 F. App'x 11, 14 (2d Cir. 2020). Since the Second Amended Complaint is "unclear" as to "plaintiff's status . . . , and because Plaintiff alleges violations of both the Eighth and Fourteenth Amendments, the Court analyzes Plaintiff's claim under the more generous Fourteenth Amendment standard applicable to pretrial detainees." *Maldonado v. Westchester Cnty.*, No. 18-CV-11410 (PMH), 2021 WL 356155, at *3 (S.D.N.Y. Feb. 2, 2021).

An allegation that an official failed to protect an inmate amounts to "a Fourteenth Amendment violation where the officer acted with 'deliberate indifference to a substantial risk of serious harm to an inmate.'" *Rosen v. City of New York*, 667 F. Supp. 2d 355, 359-360 (S.D.N.Y. 2009) (citing *Farmer v. Brennan*, 511 U.S. 825, 828 (1994)). To plead a failure-to-protect claim under Section 1983, a plaintiff must allege that (1) he or she was "incarcerated under conditions posing a substantial risk of serious harm" and (2) a prison official acted with "deliberate indifference" to his or her safety. *Warren v. Goord*, 476 F. Supp. 2d 407, 410 (S.D.N.Y. 2007). The Court analyzes each of these elements in turn. The first prong of this analysis requires a plaintiff to allege that he is "incarcerated under conditions posing a substantial risk of serious harm." *Farmer,* 511 U.S. at 834. Plaintiff may satisfy this prong by alleging a general threat of harm or by pleading that there was a specific risk to Plaintiff. *Constant v. Prack*, No. 16-CV-3985 (NSR), 2019 WL 3287818 (S.D.N.Y. July 19, 2019). Plaintiff concedes that he has not pled that he faced a specific or inidividual risk from Giriffin. Accordingly, he relies exclusively on general risk of harm.

To plead a general risk of harm, "a plaintiff must allege that the defendants knew of a history of prior inmate-on-inmate attacks similar to the one suffered by the plaintiff and that the measures they should have taken in response to such prior attacks would have prevented the attack on the plaintiff." *Parris*, 947 F. Supp. 2d at 363. In other words, the alleged general risk must be widespread and pled with non-conclusory detail. *See Locicero v. O'Connell*, 419 F. Supp. 2d 521, 528 (S.D.N.Y. 2006) (finding plaintiff had plausibly pled general risk where plaintiff alleged that "it was common knowledge among staff that Featherston abused inmates on numerous occasions. In fact, the Complaint recites an incident that suggests that the risk Featherston posed was obvious to at least one Downstate staff member. Locicero alleges that Officer Isaacs, given a description

of the nature of the attack, responded, 'Oh! That sounds like Officer Featherston, he had to be removed from draft for similar problems'").

Plaintiff avers that Griffin's placement in Delta 2 led to an attack from Griffin on Plaintiff, resulting in wounds (2d. Am. Compl. at ¶ 34). However, Plaintiffs allegations regarding the risk Griffin posed are wholly conclusory. "[A] general risk of violence in a [violent offenders] unit does not by itself establish knowledge of a substantial risk of harm, and [Plaintiff] failed to [allege] that any violent attack occurred in [Delta 2]—other than his own—to put defendants on notice of such a risk to him." *Shields v. Dart*, 664 F.3d 178, 181 (7th Cir. 2011) (internal citations omitted); *see Bistrian v. Levi*, 696 F.3d 352, 371 (3d Cir. 2012) (dismissing as "speculative" pretrial detainee's allegation that prison officials were deliberately indifferent to a substantial risk of serious harm when they placed him in a locked recreation pen with two inmates with known histories of violent assaults against other inmates); *Delaney v. Westchester Cnty. Dep't of Corr.*, No. 19-CV-03524 (PMH), 2021 WL 243066, at *3 (S.D.N.Y. Jan. 25, 2021), *judgment entered*, No. 19 CIVIL 3524 (PMH), 2021 WL 242878 (S.D.N.Y. Jan. 25, 2021) ("Because the risk of harm Plaintiff faced was not actual and imminent, there was no prior altercation between Plaintiff and Ayala-Rosario, and Plaintiff made no request for protection, the Court finds that Plaintiff's allegations do not permit the plausible inference that Plaintiff can satisfy the objective prong of a Fourteenth Amendment failure to protect claim."); *see also Williams v. Delaware Cnty. Bd. of Prison Inspectors*, 844 F. App'x 469, 475 (3d Cir. 2021) (dismissing on summary judgment as speculative failure to protect claim of pretrial detainee that "was housed on the same block as maximum-security inmates and escorted through spaces occupied by them" and "that he was housed in the same cell with maximum-security inmates, including a 'super max' prisoner"); *Carbone v. Cnty. of Suffolk*, No. CV-10-3631 SJF AKT, 2013 WL 1386251, at *7 (E.D.N.Y. Apr.

2, 2013) (granting summary judgment motion seeking dismissal of plaintiff's failure to protect claim where "the record [was] devoid of any evidence that . . . that plaintiff had any problems with his assailants, the gang to which they allegedly belonged or any other inmate prior to the assault. Indeed, although plaintiff purportedly expressed concern to a correction officer of the existence of gang members on the tier, the record is entirely devoid of evidence of any specific threats or risks to plaintiff prior to the assault, or of any violent attack occurring [the] maximum security tier, prior to plaintiff's assault").

Accordingly, Defendants' motion is GRANTED as to the Section 1983 failure to protect claim against the County. Because the deficiencies identified above were described in the Court's Prior Opinion and the Plaintiff who has at all times been represented by counsel has already amended his complaint twice, this claim is dismissed with prejudice. *See Denny v. Barber*, 576 F.2d 465, 471 (2d Cir. 1978) (finding dismissal with prejudice appropriate where the court had already notified plaintiff of deficiencies in complaint prior to amendment, and, therefore, plaintiff was not entitled to a "third go-around").

## II.    Additional Claims

First, Plaintiff agreed in a letter dated September 3, 2020 to withdraw any claims against the John Doe Defendants. (ECF No. 42.) Accordingly, any claims against the John Doe Defendants in Plaintiff's Second Amended Complaint are dismissed with prejudice.

Second, though Defendant Griffin did not join the County Defendants' Motion to Dismiss the Amended Complaint and therefore the Court did not explicitly address the battery claim against Griffin in its Prior Opinion, the Prior Opinion noted that any battery claim involving the incident on October 27, 2016, was time-barred. (ECF No. 36 at 13 n.7.) Accordingly, the sole claim against Defendant Griffin in the Second Amended Complaint—battery—is dismissed as time-barred.

**CONCLUSION**

For the foregoing reasons, (1) the claims against the Sheriff are dismissed as redundant of the claims against the County; (2) the claims against the County are dismissed for failure to plausibly allege unreasonable risk of harm; and (3) Plaintiff's claims against the John Doe Defendants and Griffin are dismissed. All claims are dismissed with prejudice as explained above.

The Clerk of Court is respectfully directed to terminate ECF No. 43 and to terminate this action.

Dated: July 30, 2021
      White Plains, NY

SO ORDERED:

HON. NELSON S. ROMAN
UNITED STATES DISTRICT JUDGE